IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 1999 Session

## FIRST AMERICAN TRUST CO. v. FRANKLIN-MURRAY DEVELOPMENT COMPANY, L.P.

**Appeal from the Chancery Court for Williamson County**
**No. 22922-R5     Henry Denmark Bell, Chancellor**

**No. M1998-00984-COA-R3-CV - Filed May 2, 2001**

This appeal involves a post-judgment receivership proceeding commenced while the case was pending on appeal. The seller of a large tract of Brentwood property obtained a judgment against the defaulting purchaser in the Chancery Court for Williamson County. While the purchaser's appeal was pending, the seller proceeded to execute on its judgment and requested the trial court to appoint a receiver to protect the interests of the purchaser's creditors. After the trial court appointed a receiver, the purchaser's former law firm filed a claim with the receiver for over $100,000 in unpaid legal expenses. When the seller's judgment against the purchaser was satisfied outside of the receivership proceeding, the trial court granted the receiver's motion to dissolve the receivership without addressing the law firm's claim. The law firm asserts on this appeal that the trial court should not have closed the receivership until its claim was addressed. We have determined that the trial court lacked jurisdiction to establish the receivership and, therefore, that the receivership proceedings were null and void. Accordingly, the trial court did not err by declining to address the law firm's claim in the receivership proceeding.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Winston S. Evans, Nashville, Tennessee, for the appellant, Shumacker & Thompson, P.C.

Alan Mark Turk, Brentwood, Tennessee, and Guy C. Nicholson, Los Angeles, California, for the appellee, Franklin-Murray Development Co., L.P.

### OPINION

Ms. Frances Oman died in May 1992 owning several large tracts of valuable realty. In accordance with Ms. Oman's will, First American Trust Company ("First American") served as the executor of her estate in the probate proceedings that followed. One of the first tasks facing First

American was to raise money to pay estate taxes. Accordingly, in April 1994, First American entered into a contract with Franklin-Murray Development, L.P. ("Franklin-Murray"), a Williamson County limited partnership, in which First American agreed to sell Franklin-Murray a 224-acre tract of property in Brentwood for $5,750,000. The contract also required Franklin-Murray to pay earnest money to an escrow agent and provided for a closing within sixty days.

Franklin-Murray paid $100,000 into escrow. However, when time came to close the sale, Franklin-Murray refused to close. It asserted that First American could not convey good and marketable title because of the estate tax liens on the property. In October 1994, after negotiations to resolve this impasse proved unsuccessful, First American filed suit in the Chancery Court for Williamson County seeking a declaration that it was entitled to keep the earnest money because Franklin-Murray had breached the contract. Franklin-Murray counterclaimed for damages on the theory that First American had breached the contract by failing to furnish good and marketable title.

In January 1995, First American changed its approach and requested an order of specific performance directing Franklin-Murray to close on the Brentwood property. It asserted that it had provided security for the outstanding tax liens and, therefore, that it could deliver good and marketable title. Franklin-Murray opposed First American's request for specific performance; however, the trial court was persuaded, and in March 1995 entered an order decreeing specific performance on the condition that First American obtain releases of all estate taxes against the property.

Franklin-Murray declined to close on the property despite the trial court's order of specific performance. Accordingly, First American returned to court seeking a summary judgment on its original claim for the earnest money being held in escrow. In June 1995, the trial court gave First American a judgment for the escrowed earnest money plus an additional $100,000 described by the court as "the remaining [e]arnest money due . . . under the Agreement." The trial court also dismissed Franklin-Murray's counterclaim. On June 15, 1995, Franklin-Murray filed its notice of appeal and an appeal bond.

The case changed course again after Franklin-Murray perfected its appeal. Because Franklin-Murray had not sought a stay pending appeal, First American decided to execute on its judgment while the appeal was pending.[1] In July 1995, First American returned to the trial court requesting a distringas writ under Tenn. Code Ann. § 26-1-105 (2000) and the appointment of a receiver for

---

[1]Executing on a judgment while an appeal is pending can prove risky. *See generally Orlando Residence, Ltd. v. Nashville Lodging Co.*, No. M1998-00221-COA-R3-CV, 1999 WL 1040544, at *2 (Tenn. Ct. App. Nov. 17, 1999) (No Tenn. R. App. P. 11 application filed) (involving a judgment creditor's execution on a judgment that was subsequently reversed).

Franklin-Murray.[2] First American alleged that Franklin-Murray was disposing of its assets in order to avoid satisfying the trial court's June 1995 judgment.

On August 9, 1995, the trial court granted First American's motion and appointed a receiver over "all the property and assets, both tangible and intangible, real and personal, of Franklin-Murray Development, L.P. and its general partner . . .." The order authorized the receiver to collect Franklin-Murray's property and assets and clothed him with the power to make all demands and to bring all claims and suits to recover any monies due the limited partnership, including the power to compromise and settle civil actions on behalf of the limited partnership. It further provided that all parties having claims against Franklin-Murray should present their claims to the receiver who could then disburse Franklin-Murray's assets to pay claims.

Franklin-Murray had been represented by the Chattanooga firm of Shumacker & Thompson, P.C. during the litigation with First American. Following the June 1995 judgment, Franklin-Murray discharged Shumacker & Thompson and retained new counsel. Franklin-Murray also declined to pay Shumacker & Thompson's legal fees because of the firm's unsatisfactory handling of the case. In December 1995, Franklin-Murray, without the receiver's knowledge or participation, filed a legal malpractice claim against Shumacker & Thompson.[3]

In February 1996, this court affirmed the trial court's June 1995 judgment finding that Franklin-Murray had breached the contract to purchase the property and awarding First American a judgment. *First American Trust Co. v. Franklin-Murray Dev. Co.*, 925 S.W.2d 545 (Tenn. Ct. App. 1996). Franklin-Murray thereafter filed an application for permission to appeal with the Tennessee Supreme Court. In April 1996, while Franklin-Murray's Tenn. R. App. P. 11 application was pending with the Tennessee Supreme Court,[4] Shumacker & Thompson filed a $100,000 claim for its unpaid legal fees with Franklin-Murray's receiver. It also requested the receiver to dismiss the newly-filed legal malpractice action because the receiver had neither filed nor authorized it.

The trial court thereafter entered various orders in the receivership proceeding, including an order directing the parties to "enter an agreed order" staying the pending legal malpractice proceeding between Franklin-Murray and Shumacker & Thompson. For approximately the next year, First American, Franklin-Murray, and Shumacker & Thompson continued to jockey back and

---

[2]First American was apparently attempting to reach a $700,000 "demand subscription" that was allegedly due Franklin-Murray. It requested the trial court to appoint a receiver "to pursue [that] apparently viable source of capital which could satisfy [First American's] judgment."

[3]The lawyer representing Franklin-Murray in its legal malpractice suit against Shumacker & Thompson later informed the receiver that he was unaware that Franklin-Murray was in receivership when he filed the suit.

[4]The Tennessee Supreme Court denied Franklin-Murray's application for permission to appeal in July 1996.

forth in the receivership with little practical effect. Finally, in early August 1997, First American filed a notice that the trial court's June 1995 judgment had been satisfied.[5]

Shortly after First American notified the trial court that its June 1995 judgment had been satisfied, Franklin-Murray's receiver filed, and the trial court entered, a combination "Receiver's Final Report and Agreed Order." The document recited that with the satisfaction of First American's judgment, "the Receiver feels there is no longer any need or purpose for his further involvement in this case." It also acknowledged Shumacker & Thompson's claim against Franklin-Murray for over $100,000 in legal fees but concluded "that the malpractice case should proceed on its own merits and that any claim of Shumacker & Thompson, P.C. against [Franklin-Murray] for unpaid legal fees should be pursued as a counterclaim in [that] action." The order concluded by discharging the receiver and terminating the two-year-old receivership.

Shumacker & Thompson promptly objected to the termination of the receivership. On September 5, 1997, it filed a Tenn. R. Civ. P. 59.04 motion requesting the trial court to reinstate the receivership and to require the receiver to marshal Franklin-Murray's assets to pay its claim for unpaid legal fees. In its order denying Shumacker & Thompson's motion, the trial court held that the "claim for breach of contract for unpaid legal fees . . . is a compulsory counterclaim to the [pending] legal malpractice action . . . and should be prosecuted in that cause and not [in the closed receivership]." Dissatisfied with the dissolution of the receivership, Shumacker & Thompson have appealed, thus bringing this case here a second time.

## I.

The only issue on this appeal involves Shumacker & Thompson's challenge to the trial court's decision to terminate the post-judgment receivership proceeding.[6] The law firm asserts that the receivership should not have been closed without some resolution of its claim for unpaid legal fees. All of Shumacker & Thompson's arguments are premised on the mistaken assumption that the post-judgment receivership proceedings were proper. Because the case was pending on appeal when the trial court created the receivership, we have concluded that the trial court had no authority to open the receivership and, therefore, that the entire receivership proceeding is of no effect.

---

[5]As best we can gather from the record, the funds used to satisfy First American's judgment did not flow through the receivership. Apparently, Robert Gerringer and Donald Corliss, two individuals arguably indebted to Franklin-Murray, stepped forward and paid an agreed amount ($75,000) to First American with the express understanding that First American would agree to wind up the receivership immediately.

[6]Shumacker & Thompson's lawyer conceded during oral argument before this court that this appeal is driven by Shumacker & Thompson's defensive strategy in the pending legal malpractice action. The law firm believes that if it can convince the courts to reopen the receivership proceeding, it will be able to obtain a ruling that only the receiver could have sued it for legal malpractice. The law firm envisions that it can use this ruling to gain the dismissal of the legal practice action and that no other legal malpractice action can be filed because the statute of limitations has expired.

-4-

## A.

A proper analysis of this case must begin at the beginning by addressing two fundamental jurisdictional principles. Even though neither party has addressed the question of the trial court's jurisdiction, we must do so because Tenn. R. App. P. 13(b) requires us to address jurisdictional issues even if they have not been raised on appeal by the parties. *Moore v. Chandler*, 675 S.W.2d 153, 154 (Tenn. 1984); *Morrow v. Bobbitt*, 943 S.W.2d 384, 391-92 (Tenn. Ct. App. 1996); *Wunderlich v. Fortas*, 776 S.W.2d 953, 957 (Tenn. Ct. App. 1989). Issues concerning subject matter jurisdiction are so important that appellate courts must address them even if they were not raised in the trial court. *Manning v. Feidelson*, 175 Tenn. 576, 578, 136 S.W.2d 510, 510-11 (1940); *Morrow v. Bobbitt*, 943 S.W.2d at 392; *Gillespie v. State*, 619 S.W.2d 128, 129 (Tenn. Ct. App. 1981).

The first principle is subject matter jurisdiction which involves a court's power to adjudicate a particular controversy brought before it. *Northland Ins. Co. v. State*, ___ S.W.3d ___, ___ (Tenn. 2000);[7] *Turpin v. Conner Bros. Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988); *Cashion v. Robertson*, 955 S.W.2d 60, 63 (Tenn. Ct. App. 1997). Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996)*; Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977), and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication. *Dishmon v. Shelby State Cmty. College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

A court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). It does not depend on the conduct or agreement of the parties. *Shelby County v. City of Memphis*, 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963); *James v. Kennedy*, 174 Tenn. 591, 595, 129 S.W.2d 215, 216 (1939). Thus, the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver. *State ex rel. Dep't of Social Servs. v. Wright*, 736 S.W.2d 84, 85 n.2 (Tenn. 1987); *Caton v. Pic-Walsh Freight Co.*, 211 Tenn. 334, 338, 364 S.W.2d 931, 933 (1963); *Dishmon v. Shelby State Cmty. College*, 15 S.W.3d at 480.

Judgments or orders entered by courts without subject matter jurisdiction are void, *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *Riden v. Snider*, 832 S.W.2d 341, 343 (Tenn. Ct. App. 1991); *Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn. Ct. App. 1988). The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated. Tenn. R. Civ. P. 12.08; Tenn. R. App. P. 13(b). Thus, when an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal. *J.W. Kelly & Co. v. Conner*, 122 Tenn. 339, 397, 123 S.W. 622, 637 (1909); *Dishmon v. Shelby State Cmty. College*, 15 S.W.3d at 480.

---

[7]*Northland Ins. Co. v. State*, No. M1998-00307-SC-R11-CV, 2000 WL 1800547, at *1 (Tenn. Dec. 8, 2000).

The second principle involves the allocation of jurisdiction between the trial and appellate courts in our hierarchical system. While jurisdictional lines are not always bright, several recent cases have worked out important guiding rules in this area. It should now be plain that once a party perfects an appeal[8] from a trial court's final judgment, the trial court effectively loses its authority to act in the case without leave of the appellate court. Perfecting an appeal vests jurisdiction over the case in the appropriate appellate court.[9] *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996); *Suggs v. Suggs' Executors*, 1 Tenn. (1 Overt.) 2, 3 (1794); *Spann v. Abraham*, 36 S.W.3d 452, 461 (Tenn. Ct. App. 1999). An appellate court retains jurisdiction over a case until its mandate returns the case to the trial court. *Raht v. Southern Ry. Co.*, 215 Tenn. 485, 498, 387 S.W.2d 781, 787 (1965) (holding that issuance of mandate by an appellate court reinvests the trial court with jurisdiction over a case); *Hall v. Pippin*, No. M2001-00387-COA-OT-CV, 2001 WL 196978, at *3 (Tenn. Ct. App. Feb. 28, 2001) (No Tenn. R. App. P. 11 application filed). These principles keep cases together during the appellate process and prevent undesirable consequences of permitting a case to be pending in more than one court at the same time. *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 596 (Tenn. 1994).

**B.**

The original lawsuit between First American and Franklin-Murray did not involve a receivership. After the trial court filed its final judgment in June 1995, Franklin-Murray perfected its appeal by filing its notice of appeal and appeal bond. At that very instant, the trial court lost its jurisdiction over the case, and jurisdiction became vested in this court.

First Tennessee invoked Tenn. Code Ann. § 29-1-103 (2000) as authority for the trial court to appoint a post-judgment receiver. However, this statute empowers trial courts to appoint receivers only in cases that are pending before them. William H. Inman, *Gibson's Suits in Chancery* § 359 (7th ed. 1988). When the trial court opened the receivership in August 1995, the case was not pending before the trial court. It was, instead, pending before the appellate court. Thus, the trial court had no subject matter jurisdiction over the case when it opened the receivership.[10]

---

[8]Perfecting an appeal consists of filing a timely notice of appeal and either an appeal bond or affidavit of indigency. *Blue Cross-Blue Shield of Tenn. v. Eddins*, 516 S.W.2d 76, 77 (Tenn. 1974) (holding that an appeal is perfected when the appeal bond is filed).

[9]Of course, perfecting an appeal does not prevent the trial court from acting with regard to ancillary matters relating to the enforcement or collection of its judgment. For example, Tenn. R. Civ. P. 69 permits judgment creditors to engage in post-judgment discovery using the same discovery methods that are used in pre-trial discovery. If a judgment debtor declines to respond to a request for post judgment discovery, a trial court could, on proper application, enter an order under Tenn. R. Civ. P. 37 to compel a response.

[10]First American could have requested this court to appoint a receiver or could have filed a new action requesting the appointment of a receiver. The pendency of an appeal does not deprive a trial court of jurisdiction to entertain a new, original action between the same parties. *State v. Mixon*, 983 S.W.2d 661, 671 (Tenn. 1999).

Orders entered by a trial court after it loses jurisdiction are nullities. *New River Lumber Co. v. Tenn. Ry.*, 141 Tenn. 325, 329, 210 S.W. 639, 640 (1919); *Hutchison v. Pyburn*, 567 S.W.2d 762, 763-64 (Tenn Ct. App. 1977). Accordingly, the receivership established by the trial court in this case and all subsequent orders involving the receivership are *coram non judice*. All of the issues raised by Shumacker & Thompson on this appeal relate to the receivership. We need not address these questions because we have concluded that the trial court acted without jurisdiction when it appointed the receiver in this case. The fact that the receivership was a nullity obviates the need to consider the conduct of either the trial court or the receiver during the receivership proceeding.

Our conclusion that the receivership proceeding itself was a nullity does not leave Shumacker & Thompson without a remedy. In its August 6, 1997 order, the trial court observed that the claim for unpaid legal fees "can and should be pursued as a counterclaim in the [legal malpractice] action." That is undoubtedly correct. *Starks v. Browning*, No. 01A01-9801-CV-00038, 1999 WL 562032, at *7 (Tenn. Ct. App. Aug. 3, 1999) (No Tenn. R. App. P. 11 application filed). Accordingly, Shumacker & Thompson may seek to recover their legal fees in Franklin-Murray's pending legal malpractice action.

## II.

Based on our conclusion that the receivership proceeding was a nullity, we affirm the trial court's decision refusing to permit Shumacker & Thompson to use the receivership proceeding to collect its unpaid legal fees from Franklin-Murray.[11] We remand the case to the trial court for whatever further proceedings may be appropriate, and we tax the costs of this appeal to Shumacker & Thompson and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[11]The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Allen v. National Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).